James E. Cecchi
Caroline F. Bartlett
Jordan M. Steele
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

[Additional Attorneys on Signature Page]

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY ROBINSON, THOMAS STEFANOPOULOS, and FRANCY DIAZ PEREZ, Individually And On Behalf Of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>MERCEDES-BENZ USA, LLC, MERCEDES-BENZ AKTIENGESELLSCHAFT, and MERCEDES-BENZ GROUP AKTIENGESELLSCHAFT,<br><br>        Defendants. | Case No.: _____<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

## TABLE OF CONTENTS

**Section**                                                                  **Page**

I.      INTRODUCTION ......................................................................................1

II.     JURISDICTION AND VENUE ...............................................................4

III.    PARTIES ..................................................................................................6

IV.     FACTUAL ALLEGATIONS .....................................................................11

     A.  Mercedes Advertises Its Vehicles As "The Best Or Nothing," And Represents That Its Vehicles Are Safe And Reliable. .......................11

     B.  Mercedes Knew About the Brake Defect But Has Failed To Correct The Brake Defect..............................................................................12

         1.  Defendants' Internal Testing .................................................13

         2.  Customer Complaints Made to Defendants and NHTSA ...........13

         3.  Online Reputation Management.................................................23

         4.  Manufacturer Communications with NHTSA ............................24

         5.  Prior Recall of Mercedes Vehicles Due to Defective Brakes. ....25

     C.  The Inadequate and Untimely Safety Recall of Class Vehciles .........26

     D.  Despite Its Knowledge, Mercedes Misrepresented And Concealed Important Information About the Brake Defect and Class Vehicle Safety.............................................................................................28

V.      CLASS ACTION ALLEGATIONS.............................................................34

     A.  The Class Definition.........................................................................34

     B.  Numerosity: Federal Rule of Civil Procedure 23(a)(1) ......................35

     C.  Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)............................................................................36

D.  Typicality: Federal Rule of Civil Procedure 23(a)(3)..........................38

E.  Adequacy: Federal Rule of Civil Procedure 23(a)(4) ..........................38

F.  Declaratory and Injunctive Relief: Federal Rule of Civil Procedure
    23(b)(2)...............................................................................................39

G.  Superiority: Federal Rule of Civil Procedure 23(b)(3) .......................39

VI.  ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED........40

VII.  NATIONWIDE CLASS CLAIMS ...................................................................41

NATIONWIDE COUNT I .................................................................................41
    VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

NATIONWIDE COUNT II .................................................................................46
    FRAUD BY CONCEALMENT OR OMISSION

NATIONWIDE COUNT III.................................................................................49
    NEGLIGENT MISREPRESENTATION

NATIONWIDE COUNT IV .................................................................................52
    UNJUST ENRICHMENT

NATIONWIDE COUNT V.................................................................................53
    VIOLATION OF THE N.J. CONSUMER FRAUD ACT ("NJCFA")

NATIONWIDE COUNT VI .................................................................................57
    BREACH OF EXPRESS WARRANTY

NATIONWIDE COUNT VII .................................................................................63
    BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

VIII.  STATE SPECIFIC CLAIMS.........................................................................67

A.  Florida Counts ....................................................................................67

IX.  PRAYER FOR RELIEF ....................................................................................67

X.  DEMAND FOR JURY TRIAL .........................................................................84

Plaintiffs Jeffrey Robinson, Thomas Stefanopoulos, and Francy Diaz Perez (collectively, "Plaintiffs") bring this action against Mercedes-Benz USA, LLC ("MBUSA"), Mercedes-Benz Aktiengesellschaft ("MBAG"), and Mercedes-Benz Group Aktiengesellschaft ("MBG") (together, "Mercedes" or "Defendants") based upon personal knowledge as to allegations specifically pertaining to Plaintiffs and, as to all other matters, upon the investigation of counsel.[1]

## I.   INTRODUCTION

1.    The ability of a vehicle to stop when the driver pushes on the brake pedal cannot be overstated – it is a vehicle's paramount safety feature. Properly functioning and defect free brakes are essential to the safety of the driver, passengers, occupants of other vehicles in proximity, and innocent bystanders. Yet, Defendants failed to inform consumers of the potentially deadly breaking system installed in certain 2006-2012 ML-Class, GL-Class, and R-Class vehicles ("Class Vehicles"),[2]

---

[1] Counsel's investigation includes an analysis of publicly available information, including Defendants' Manufacturer Communications to the National Highway Traffic Safety Administration ("NHTSA"), NHTSA documents and consumer complaints. Plaintiffs believe that a reasonable opportunity for discovery will reinforce all of these claims.

[2] The Class Vehicles include the Mercedes (Models/Model Years): AMG R63/2007, GL320/2007-2009, GL350/2010-2012, GL450/2007-2012, GL550/2008-2012, ML320/2007-2009, ML350/2006-2011, ML450/2010-2011, ML500/2006-2007, ML550/2008-2011, R320/2007-2009, R500/2006-2007, AMG ML63/2007-2011, R350/2006-2012, and R550/2008. Discovery may reveal additional makes and/or models affect by the Brake Defect, Plaintiffs shall amend to include additional makes and/or models as necessary.

and they failed to repair or replace the defective braking system in a timely manner in these vehicles sold or leased to consumers nationwide, including Plaintiffs.

2.     The braking systems equipped in all Class Vehicles are plagued by a design defect that leads to partial or total loss of braking capability (the "Brake Defect"). The Brake Defect is present at the point of purchase and manifests in the Class Vehicles as a result of accumulating moisture in the brake booster housing unit, which causes corrosion and results in reduced brake performance or brake failure. This Defect is common to all Class Vehicles and is a clear safety hazard that was within the exclusive knowledge of Defendants and was never disclosed to any member of the Class prior to purchase.

3.     Defendants have had actual knowledge of the Defect since at least June 15, 2009, when Mercedes issued a Technical Service Bulletin ("TSB") to its network of dealers that warned of the dangerous impact corrosion may have on the brake components of the Class Vehicles manufactured to date. Defendants knew or should have known of the Defect much earlier due to pre-production testing, failure mode analysis, and reports to authorized dealers, repair centers, and complaints to the NHTSA. Nevertheless, Defendants chose to omit material information about the Brake Defect and not to disclose these problems to Plaintiff and the Class, so that they could continue to profit from the sale and lease of the Class Vehicles. It was only in May of 2022 that Mercedes decided to conduct a safety recall of the Class

Vehicles. And Defendants have not yet provided direct notice to consumers of the Brake Defect.

4.     The untimely and ineffective recall is insufficient to remedy the harm caused to Plaintiffs and members of the Class, who overpaid for their Class Vehicles at the point of purchase and are now deprived of the beneficial use of their Class Vehicle. Indeed, Mercedes has acknowledged the severity of the Brake Defect by advising owners "not to drive their vehicles until the remedy has been performed." The NHTSA database for any of the Class Vehicles warns users of the following:

## URGENT: DO NOT DRIVE THIS VEHICLE

An urgent safety recall has been issued for this vehicle. Use our VIN lookup tool to see if your vehicle is part of this recall.

If your vehicle is part of this recall, the manufacturer has recommended that **you stop driving this vehicle immediately**.

More information is available under

- NHTSA Recall Number 22V315000.

5.     Despite Defendants' knowledge, Defendants omitted information regarding the Brake Defect from all advertising, promotion, or other contacts with Plaintiff and Class members prior to purchase. Defendants have yet to issue an Owner Notification Letter to Plaintiffs and members of the Class. By failing to

disclose the Brake Defect to consumers and by failing to correct the problem, delaying the recall, and otherwise failing to act reasonably, Defendants have put their own profits over the safety of Plaintiffs and the Class, who all purchased and leased vehicles of a lesser standard, grade and quality than was represented. The Class Vehicles do not meet ordinary and reasonable consumer expectations regarding the quality, durability, or value and are unfit for their intended purpose. Moreover, the Brake Defect seriously endangers drivers, passengers, and the general public.

6.    As a direct result of Defendants' wrongful conduct, Plaintiffs and members of the Class have suffered damages, including, inter alia: (1) deprivation of the benefit of their bargain by overpaying for the Class Vehicles at the time of sale or lease; (2) out-of-pocket expenses for repair or replacement of the defective braking systems; (3) costs for future repairs or replacements; (4) sale of their Class Vehicle at a loss; (5) loss of use of the Class Vehicles; and/or (6) diminished value of their Class Vehicles. Should Plaintiffs' demanded legal relief be unavailable or prove insufficient, Plaintiffs seek appropriate equitable and injunctive relief in the alternative pursuant to Fed. R. Civ. P. 8(a)(3).

## II.    JURISDICTION AND VENUE

7.    This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100

members of the Class, members of the Class (as defined below) are citizens of states different from Defendants, and greater than two-thirds of the members of the Class reside in states other than the states in which Defendant is a citizen. This Court has jurisdiction over supplemental state law claims under 20 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

8.    This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendants under 18 U.S.C. § 1965(d) because Defendants are found, have agents, and transact substantial business in this District.

9.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because Defendants have marketed, advertised, sold, and/or leased the Class Vehicles within this District through numerous Mercedes dealers doing business in the District. Defendants' actions have caused harm to hundreds of members of the Class residing in New Jersey, including Plaintiffs Jeffrey Robinson and Thomas Stefanopoulos. MBUSA maintains a Northeast Region Office at 50 Craig Road, Montvale New Jersey 07645. The Northeast Region Office is responsible for "advertising, sales, and marketing for dealers in the Northeast and parts of the

Midwest" and employs 112 employees.[3] MBG lists the Northeast Region Office on its website and so promotes its contacts with New Jersey. Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District and venue is proper.

## III.    PARTIES

### PLAINTIFFS

10.    Plaintiff Jeffrey Robinson ("Plaintiff" for purposes of paragraphs 10-11) is an individual residing in Vineland, New Jersey. Plaintiff purchased a pre-owned 2010 Mercedes-Benz GL450 (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around March of 2022 from A. Estates Inc. in Vineland, New Jersey. At the time, Plaintiff reasonably expected that the brakes would function properly for the duration of the useful life of the Class Vehicle.

11.    Plaintiff had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake

---

[3]    *See Montvale, NJ Northeast Region Office*, MERCEDES-BENZ GROUP, AKTIENGESELLSCHAFT        https://group.mercedes-benz.com/careers/about-us/locations/location-detail-page-369728.html (last visited May 17, 2022).

Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Plaintiff's Class Vehicle has diminished.

12.    Plaintiff Thomas Stefanopoulos ("Plaintiff" for purposes of paragraphs 12-13) is an individual residing in Williamstown, New Jersey. Plaintiff purchased a pre-owned 2008 Mercedes-Benz ML550 (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around March of 2020 from J&S AutoHaus in New Jersey. At the time, Plaintiff reasonably expected that the brakes would function properly for the duration of the useful life of the Class Vehicle. Plaintiff has experienced a change in the brake pedal feel.

13.    Plaintiff had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Plaintiff's Class Vehicle has diminished.

14.     Plaintiff Francy Diaz Perez ("Plaintiff" for purposes of paragraphs 14-16) is an individual residing in Cape Coral, Florida. Plaintiff purchased a pre-owned 2012 Mercedes-Benz GL450 (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around March of 2019 from Avin Enterprises, Inc. in Tampa, Florida. At the time, Plaintiff reasonably expected that the brakes would function properly for the duration of the useful life of the Class Vehicle.

15.     Plaintiff has experienced a change in the brake pedal feel and diminished braking capability. Plaintiff brought her Class Vehicle to the Mercedes-Benz of Fort Myers, Florida and spoke with Dena Judah, a Service Advisor, who informed her that there is currently no solution for the Recall. Plaintiff then contacted 1 (888) 548-8514 and spoke with a Mercedes Representative who informed Plaintiff that her Class Vehicle is impacted by the Recall, but Mercedes is unable to offer a solution until she receives an Owner Notification Letter. Plaintiff was informed that she would have to pay out-of-pocket for a loaner vehicle until the Class Vehicle could be examined in multiple rounds of inspections.

16.     Plaintiff had no way of knowing the Class Vehicle contained a Brake Defect that could cause complete or partial loss of braking capability. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and

reliability of the Class Vehicle. Defendants concealed the existence of the Brake Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Brake Defect and as a result, the value of Plaintiff's Class Vehicle has diminished.

## DEFENDANTS

17.   Defendant MBG is a German Aktiengesellschaft with its principal place of business in Stuttgart, Germany. In February 2022, the company was renamed to "Mercedes-Benz Group AG" from "Daimler AG." MBG is one of the largest automobile manufacturers in the world and is in the business of designing, developing, testing, manufacturing, and selling automobiles. In 2021, MBG was the second-largest German automaker and the sixth-largest worldwide by production. MBG trades on Xetra, the reference market for exchange trading in Germany, under the ticker "MBG."

18.   Defendant MBAG was created in November 2019, when MBG announced that Mercedes-Benz, up until that point a company marque, would be spun off into a separate wholly-owned subsidiary called "Mercedes-Benz AG." MBAG is a German Aktiengesellschaft with its principal place of business in Stuttgart, Germany. MBAG is a subsidiary of MBG that manages the Mercedes-Benz car and van business worldwide. During the manufacturing and sales of the

Class Vehicles in the 2006-2012 period, MBG and MBAG operated as one entity under the name "Daimler AG."

19.     Defendant MBUSA is a corporation that was founded in Montvale, NJ and does business throughout the United States. MBUSA's corporate headquarters is located in Sandy Springs, Georgia. MBUSA is a wholly owned U.S. subsidiary of MBAG, and it engages in business activities in furtherance of the interests of MBAG and MBG, including the advertising, marketing and sale of Mercedes automobiles nationwide. Until the 2019 spinoff of MBAG, MBUSA operated under MBG f/k/a Daimler AG.

20.     At all relevant times, MBUSA acted as an authorized agent, representative, servant, employee and/or alter ego of MBG and MBAG while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information, and monitoring the performance of Mercedes vehicles in the United States, including substantial activities that occurred within this jurisdiction.

21.     At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the Mercedes brand name throughout the United States. Defendants and/or their agents designed, manufactured, and/or installed braking systems with the Brake Defect in the Class Vehicles. Defendants and/or their agents also developed and disseminated the

owner's manuals and warranty booklets, and other promotional materials relating to the Class Vehicles, and all materials that were available at the point of sale.

## IV.    FACTUAL ALLEGATIONS

### A.    <u>Mercedes Advertises Its Vehicles As "The Best Or Nothing," And Represents That Its Vehicles Are Safe And Reliable.</u>

22.    Defendants manufacture vehicles sold under the Mercedes brand throughout the United States. Defendants designed, manufactured, distributed, marketed, and/or sold the Class Vehicles in the United States. Defendants also provide service and maintenance for the Class Vehicles through their extensive network of authorized dealers and service providers nationwide.

23.    Mercedes marketed, distributed, and warranted the Class Vehicles in the United States in a uniform manner.

24.    Throughout the years, and at all times relevant to this action, Mercedes has marketed the Class Vehicles as having the highest quality, being the most durable, and maintaining the best resale value of any vehicles on the road.  Mercedes uses tag lines such as "state-of-the-art," "luxury," "fine craftsmanship," "the most advanced vehicles on the road," and "enduring quality," and encourages consumers to buy "the best" vehicle on the market (i.e., a Mercedes).

25.    To most people, the Mercedes name in and of itself represents luxury and prestige, and for owners and lessees of Mercedes vehicles, the three-pointed star is a symbol of their success.

26.     During the period in which the Class Vehicles were manufactured, in each of its 2007-2012 Annual Reports MBG stated:

> We invented the automobile – now we are passionately shaping its future. As a pioneer of automotive engineering, we feel inspired and obliged to continue this proud tradition with groundbreaking technologies and high-quality products. Our philosophy is clear: We give of our best for customers who expect the best – and we live a culture of excellence that is based on shared values. Our corporate history is full of innovations and pioneering achievements; they are the foundation and ongoing stimulus for our claim to leadership in the automotive industry.

27.     In contrast to Mercedes's marketing campaign, the Class Vehicles are equipped with braking systems that may fail and result in partial or total loss of braking capability, creating an inherently dangerous safety risk with potentially disastrous consequences for Plaintiffs and members of the Class. Defendants knew or should have known of the Brake Defect but failed to rectify it.

**B.      Mercedes Knew About The Brake Defect But Has Failed To Correct The Brake Defect.**

28.     Defendants fraudulently, intentionally, negligently and/or recklessly concealed from Plaintiffs and members of the Class the Brake Defect in the Class Vehicles even though Defendants knew or should have known of design defects in Class Vehicles if Defendants had adequately tested the braking systems in the Class Vehicles.

29.     Knowledge and information regarding the Brake Defect was in the exclusive and superior possession of Defendants and their dealers. That information

was not provided to Plaintiffs and members of the Class. Based on pre-production testing, basic brake systems tests and validation, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, consumer complaints to the NHTSA, and testing performed in response to consumer complaints, *inter alia*, Defendants were aware (or should have been aware) of the Brake Defect in the Class Vehicles and fraudulently concealed the Brake Defect and its safety risk from Plaintiffs and members of the Class. Defendants knew, or should have known, that the Brake Defect was material to owners and lessees of the Class Vehicles and was not known or reasonably discoverable by Plaintiffs and members of the Class before they purchased or leased Class Vehicles.

1.    Defendants' Internal Testing

30.    Defendants had actual knowledge of the Brake Defect based on their internal pre-production testing and quality control mandates.  To validate for safety, Defendants perform crash tests, brake systems tests and validation, and extreme weather testing on the braking systems, among other things, to ensure that the brakes in the Class Vehicles meet regulatory requirements.

2.    Customer Complaints Made to Defendants and NHTSA

31.    Defendants' dealerships provide Defendants with early knowledge of defects, including the Brake Defect, through the reporting of customer complaints

and warranty claims. Defendants' employees closely monitor internal databases containing customer complaints and warranty claims to identify, track, and address emerging problems from design and engineering standpoints, among others.

32.    Defendants' engineering and marketing departments likewise routinely monitor public sources of competitor data, like the NHTSA customer complaint database, to track and compare problems with components on other manufacturers' products.

33.    The earliest customer complaint in the NHTSA database involving the Brake Defect was entered into the database on September 13, 2007, just months after the first Mercedes was sold to a member of the proposed class. In addition, Defendants have and continue to be under a legal obligation under federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them. Defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein to comply with their reporting obligations under federal law.

34.    Notwithstanding Defendants' exclusive and superior knowledge of the Brake Defect, and associated risks to safety, Defendants failed to disclose the Brake Defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the Brake Defect. Defendants have intentionally concealed the Brake Defect and that the Brake Defect

14

may fail and presents a safety risk rather than disclosing the Brake Defect and risk to consumers, including Plaintiffs, members of the Class, and the public.

35.    As set forth above, Defendants know about the Brake Defect due to consumer complaints such as those made to the NHTSA, which Defendants monitor as part of a continuous obligation to identify potential defects in their vehicles.[4]

36.    Defendants' deceptive acts, misrepresentations and/or omissions regarding the Brake Defect create a safety risk for drivers and occupants of the Class Vehicles and members of the public who may be involved in accidents with Class Vehicles that experience the Brake Defect while they are being driven. When the Brake Defect manifests, the vehicle may experience partial or total loss of braking capability, increasing the risk of injury to occupants. The reasonable expectation that the Class Vehicles are safe and reliable to drive (and ride in) is and was material to Plaintiffs and members of the Class at all relevant times.

37.    Defendants also knew about the Brake Defect through monitoring NHTSA complaints identifying the Brake Defect, below is a sampling of these complaints:

---

[4]  NHTSA-ODI does not share complainants' personal information with the general public. A complaint is added to a public NHTSA database only after NHTSA removes all information from complaint fields that personally identify a complainant. NHTSA-ODI complaints are made by individuals who must identify themselves, enter detailed contact information and vehicle information (including an accurate VIN) before the complaints are reviewed and analyzed by NHTSA. There are penalties for submitting false statements.

NHTSA ID Number:        10202934
Incident Date:          January 2, 2007
Added to NHTSA Database: September 13, 2007
Consumer Location:      SAN JOSE, CA
Vehicle Type:           2007 Mercedes-Benz GL450
VIN:                    4JGBF71E77A****

TL*THE CONTACT OWNS A 2007 MERCEDES BENZ GL450. THE CONTACT HEARD A SQUEAKING NOISE WHEN HE DEPRESSED THE BRAKE PEDAL AND THE STOPPING DISTANCE INCREASED. THE DEALER WAS UNABLE TO DIAGNOSE THE CAUSE OF FAILURE, HOWEVER, THEY GRINDED THE EDGES OF THE BRAKE PADS TO REDUCE THE SQUEAKING NOISE. THE SPEED WAS UNKNOWN. THE FAILURE MILEAGE WAS 4,000 AND CURRENT MILEAGE WAS 6,600. THE DEALER RECOMMENDED CHAMFERING THE BRAKE PADS TO ALLEVIATE THE NOISE. THE DEALER STATED VEHICLE LOW ON OIL. UPDATED 09/2807 *TR

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:        10220937
Incident Date:          February 18, 2008
Added to NHTSA Database: March 12, 2008
Consumer Location:      SACRAMENTO, CA
Vehicle Type:           2007 Mercedes-Benz GL450
VIN:                    4JGBF71E07A****

ON FEBRUARY 18, 2008 AT APPROXIMATELY 3:30 PM I WAS INVOLVED IN AN MVA IN WHICH I STRUCK THE CAR IN FRONT OF ME AT CONSIDERABLE SPEED. THIS CAUSED CONSIDERABLE DAMAGE TO MY CAR (2007 MERCEDES GL450) WITH NO AIR BAG DEPLOYMENT. DURING THE ATTEMPT AT STOPPING I FELT THE BRAKE PEDAL BECOME MUSHY AND BE INEFFECTIVE. AT FIRST THE BRAKES GRABBED STRONG AND THEN LET LOOSE WITH THE EVENTUAL COLLISION. AFTER CONSULTING WITH AN INDEPENDENT MERCEDES MECHANIC, IT WAS SUGGESTED THAT THIS BRAKE BEHAVIOR COULD BE EXPLAINED BY AN ANTI-LOCKING BRAKE (ABS) SENSOR FAILURE. THIS

16

WOULD ACCOUNT FOR THE RELEASE OF THE BRAKES
(POSSIBLE DETECTION OF SKID) BUT ALSO THE FALSE
DATA REACHING THE CENTRAL COMPUTER WITH AN
ERRONEOUS SPEED, THUS DISABLING THE AIRBAGS. I
HAVE BEEN IN CONTACT WITH MERCEDES BENZ OR NORTH
AMERICA WHICH HAS YIELDED NO INSPECTION OR
RESOLUTION. I HAVE BEEN ASKING FOR ONE OF THEIR
FIELD ENGINEERS TO EXAMINE THE CAR AND SEE IF THE
ABS SENSOR IS RESPONSIBLE FOR THE POSSIBLE BRAKE
FAILURE. ALTHOUGH THE CRASH MAY STILL BE MY
DRIVER ERROR, I DON'T FEEL COMFORTABLE REPAIRING
THE CAR AND GIVING IT BACK TO MY WIFE FOR
TRANSPORTATION OF THE FAMILY. HAS AN ABS SENSOR
FAILURE BEEN REPORTED FOR THIS MODEL BEFORE? *TR

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:          10263214
Incident Date:            March 21, 2009
Added to NHTSA Database:  March 27, 2009
Consumer Location:        DARIEN, CT
Vehicle Type:             2008 Mercedes-Benz ML-Class
VIN:                      4JGBB86E38A****

IT WAS 6:30 IN THE MORNING AND I WAS PULLING INTO MY
GYM'S PARKING LOT. AS I ATTEMPTED TO BRAKE, THE CAR
CONTINUED TO ACCELERATE. I KEPT PUMPING ON THE
BRAKE ONLY TO HAVE THE CAR MAKE A GRINDING SOUND
AS IT CONTINUED TO ACCELERATE (AS IF IT WERE
RESISTING MY ATTEMPTS TO STOP IT). EVENTUALLY, AND
THANKFULLY BEFORE IT HIT THE BUILDING, THE CAR
STALLED TO A STOP. THE CAR ACTUALLY ASCENDED 3
WOODEN PORCH STEPS AND HIT INTO A WOODEN PORCH
COLUMN BEFORE STOPPING. IT WAS A VERY EARLY
SATURDAY MORNING. HAD I PULLED INTO THIS DRIVEWAY
MID MORNING, ON THIS SATURDAY (A TIME WHEN THIS
GYM IS ESPECIALLY ACTIVE), I COULD VERY WELL HAVE
KILLED SOMEBODY. ON THE DAY OF THE INCIDENT, THE
CAR WAS TOWED TO MERCEDES BENZ OF GREENWICH,
CONNECTICUT. AT THE TIME, I WAS GIVEN A LOANER CAR

TO DRIVE (AT NO EXPENSE TO ME). I HAVE BEEN TOLD THAT A CASE HAS BEEN ESTABLISHED TO INVESTIGATE THE INCIDENT. AFTER A WEEK'S TIME, I CONTACTED MERCEDES BENZ (800-367-6372 X6302 JUSTIN) IN AN EFFORT TO ASCERTAIN THE STATUS OF THIS INVESTIGATION. I COULD NOT GET A DIRECT ANSWER OF ANY KIND FROM THE GENTLEMAN THAT I SPOKE TO. MERCEDES BENZ'S LACK OF COMMUNICATION HAS BEEN VERY DISTURBING GIVEN THE SEVERITY OF THIS SITUATION. THIS IS A LEASED CAR WHICH I HAVE HAD FOR A LITTLE OVER 1 YEAR. WITHOUT ANY KIND OF EXPLANATION FROM MB AS TO WHY THIS HAPPENED, I DON'T THINK I WOULD STEP INTO THIS CAR IF AND WHEN IT WAS REPAIRED. I WOULD APPRECIATE ANY INTERVENTION YOUR DEPARTMENT IS PREPARED TO PUT FORTH ON MY BEHALF HERE THANK YOU. *TR

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:          10304549
Incident Date:            February 3, 2010
Added to NHTSA Database:   February 3, 2010
Consumer Location:        WEST BLOOMFIELD, MI
Vehicle Type:             2007 Mercedes-Benz GL450
VIN:                      4JGBF71EX7A****

TODAY MY HUSBAND WAS INVOLVED IN A CAR ACCIDENT WHILE DRIVING MY 2007 GL450. THANK GOD HE WASN'T INJURED BUT THE SITUATION HE EXPLAINED TO ME HAS HAPPENED SEVERAL TIMES BEFORE AND I'VE BEEN ABLE TO REGAIN CONTROL OF THE CAR BEFORE SOMETHING TERRIBLE HAPPENED. HE LEFT HOME FOR WORK AT ABOUT 6AM AND WHILE STILL IN THE SUBDIVISION DRIVING ABOUT 20 MILES/HR ON A ROAD WITH ABOUT 1" OF SNOW, HE TRIED TO MAKE A RIGHT TURN BUT THE BRAKES LOCKED AND THE STEERING WOULDN'T TURN AND HE ENDED UP SMASHING THE FRONT END ON A HUGE STONE AND RICOCHETING TO A FIRE HYDRANT. LIKE I SAID, THIS HAS HAPPENED BEFORE AND I'D BEEN ASSUMING THAT THE SKIDDING WAS BECAUSE OUR TIRES WERE WORN BUT

WE GOT BRAND NEW TIRES LESS THAN A WEEK AGO SO
THIS DOES NOT MAKE ANY SENSE. I HAVEN'T BEEN IN
TOUCH WITH MERCEDES YET BUT I WILL BE CONTACTING
THEM TO ADVISE THEM OF THIS ISSUE. *TR

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:           10346893
Incident Date:             July 10, 2010
Added to NHTSA Database:    August 10, 2010
Consumer Location:         POMONA, CA
Vehicle Type:              2007 Mercedes-Benz R350
VIN:                       4JGCB65E86A****

I DROVE UP A 6000' HIGH MOUNTAIN,PULLED OVER ONTO A
WIDE FLAT PULLOFF SAT THERE FOR 20 MINUTES, THEN
RESTARTED THE CAR AND HAD NO BRAKES. MY FOOT
WENT TO THE FLOOR. I HAD NOT USED THE BRAKES ON THE
WAY UP THE MOUNTAIN BECAUSE THE ROAD WAS
STEEPLY UPHILL. I TRIED TURNING THE CAR ON AND OFF
SEVERAL TIMES AND STILL NO BRAKES. I WAITED ABOUT
20 MINUTE AND TRIED AGAIN,STILL HAD NO BRAKES.
THERE WERE 3 OF US IN THE CAR, AND WE MANAGED TO
GET A RIDE SEVERAL MILES DOWN AND CALLED A TOW
TRUCK. I T TOOK ABOUT 4 HOURS FOR THEM TO ARRIVE.I
TRIED THE BRAKES AGAIN, AND STILL HAD NONE. AFTER
IT WAS TOWED TO A REPAIR SHOP, APPROXIMATELY 5
HOURS AFTER THE INITIAL PROBLEM, I STILL HAD NO
BRAKES. THIS HAPPENED ON A SATURDAY NIGHT. ON
MONDAY, THE BRAKES HAD PUMPED BACK UP. I HAD IT
TOWED TO PENSKE MERCEDES DEALERSHIP. THEY TESTED-
BRAKES,FLUIDS ETC. AND COULD FIND NO PROBLEM. THEY
BALKED AT DRIVING IT UP THE MOUNTAIN, BUT FINALLY
SAID THEY DID DO IT, AND THE BRAKES WERE FINE. THIS
ALL HAPPENED OVER 3 WEEKS AGO. I HAVE SPOKEN WITH
3 LEVELS OF AUTHORITY AT THE DEALER, AND THEY
INSIST THERE IS NO PROBLEM, AND I SHOULD PICK THE
CAR UP OR HAVE IT TOWED AWAY, OR PAY THEM A $25 PER
DAY STORAGE FEE. I ALSO CALLED THE 800 NUMBER FOR
MB CORPORATE, AND HAVE NEVER RECEIVED A CALL

BACK. THE DEALER SAID THEY WERE CONTACTED BY CORPORATE MB AND TOLD WHICH TESTS TO PERFORM, AND THEY TOLD THEM THEY HAD ALREADY DONE THOSE SAME TESTS AND THE CAR PASSED THEM ALL. MERCEDES CORPORATE THEN TOLD THEM TO TELL ME THE CAR WAS FINE. AND I SHOULD PICK IT UP. THIS IS THE SECOND TIME I'VE HAD THE SAME FAILURE, ALSO AT THE SAME ALTITUDE;HOWEVER THE FIRST TIME, AFTER TURNING THE CAR OFF FOR A FEW MINUTES, THE BRAKES WERE BACK UP AND USABLE. JUST BECAUSE THE CAR PASSES THEIR TESTS DOES NOT MEAN THERE IS NO PROBLEM-IT SIMPLY MEANS THEY HAVE NO TEST CAPABLE OF DISCOVERING THE CAUSE. MUST I DIE BEFORE THEY REPAIR THE CAR? I WAS GOING TO MAKE U-TURN AT THE PULL-OFF. WE'RE ALIVE BECAUSE I DIDN'T GET THAT FAR. *TR

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

NHTSA ID Number:            10452109
Incident Date:              March 9, 2012
Added to NHTSA Database:     March 18, 2012
Consumer Location:          MERCER ISLAND, WA
Vehicle Type:               2009 Mercedes-Benz ML350
VIN:                        4JGBB86E89A****

I HAVE A 2009 MERCEDES ML 350. ABOUT A WEEK AGO, MY BREAK FLUID LIGHT CAME ON. I TOOK IT INTO THE DEALERSHIP, AND THEY TOPPED THE FLUID OFF. A FEW DAYS PASSED, AND THE LIGHT WENT ON AGAIN. I TOOK IT INTO THE DEALERSHIP, AND IT WAS VERIFIED THAT "THE PRESSURE DROPS AFTER SEVERAL MINUTES. (THEY) FOUND THE LINE INTO THE ABR PUMP WAS LEAKING. R&R PUMP TO INSPECT LINES AND FOUND METAL LINE DEFORMED AT FLARE". *TR

●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●●

NHTSA ID Number:            10454010
Incident Date:              March 21, 2012
Added to NHTSA Database:     April 3, 2012

20

Consumer Location:                   CHARLOTTE, NC
Vehicle Type:                        2008 Mercedes-Benz GL-Class
VIN:                                 4JGBF71E88A****

I CAME OUT OF THE SHOPPING MAUL INTO THE PARKING
LOT, ENTERED INTO THE CAR AND PUT IT IN REVERSE.
THEN L PRESSED THE BRAKES TO STOP THE VEHICLE AND
GO FORWARD, BUT THE BRAKES WOULD NOT STOP THE
CAR. THE CAR KEPT GOING BACKWARDS AND L KEPT
PRESSING THE BRAKES WITHOUT ANY RESULT. THE CAR
SMASHED INTO 4 PARKED VEHICLES AND STILL DID NOT
STOP. I ATTEMPTED TO PUT IT IN NEUTRAL TO STOP IT OR
SLOW IT DOWN, BUT FINALLY THE CAR STARTED GOING
FORWARD AND L PRESSED THE BRAKES MULTIPLE TIMES,
BUT THE CAR STILL DID NOT RESPOND AND KEPT GOING
FORWARD AND SKIDDING AND EVENTUALLY SMASHED
INTO A TREE AND STOPPED. L HAVE CONTACTED
MERCEDES, BUT THEY ARE YET ACT. THE CAR POWER
STEERING WENT OUT 3 DAYS BEFORE THE ACCIDENT AND
WAS JUST REPLACED THE DAY BEFORE THE ACCIDENT.
THERE HAVE BEEN SEVERAL COMPLAINTS WITH THIS
MODEL AND RECALL ON THE POWER STEERING. I HAVE
INCURRED OVER 35,000 DOLLAR DAMAGE TO THE VEHICLE
AND OTHER VEHICLES AND NEED MERCEDES BENZ TO STEP
UP AND FIGURE OUT WHY THE CAR KEPT ACCELERATING
DESPITE MY APPLYING THE BRAKES. *TR

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:                     10909481
Incident Date:                       September 24, 2016
Added to NHTSA Database:             September 24, 2016
Consumer Location:                   PROSPECT, KY
Vehicle Type:                        2007 Mercedes-Benz ML-Class
VIN:                                 4JGBB75EO7A****

MECHANICAL FAILURE, STEERING JAM AND BRAKE DID
NOT WORK DURING DRIVING AT 15-20 MPH IN SUBDIVISION
STREET. GOT IN ACCIDENT HITTING THE VAN.

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:          11029894
Incident Date:           September 17, 2017
Added to NHTSA Database:  September 26, 2017
Consumer Location:       BRONXVILLE, NY
Vehicle Type:            2010 Mercedes-Benz ML350
VIN:                     N/A

TWO ISSUES WITH MY ML350 2010 CAR - 1) ELECTRICAL - GAS GAUGE WENT TO ZERO WHILE DRIVING EVEN WHEN CAR WAS THREE QUARTERS FULL OF GAS. AFTER I STOPPED CAR AND RESTARTED ENGINE, GAS GAUGE WENT IMMEDIATELY BACK UP TO THREE QUARTERS FULL. 2) FAILED BRAKES - I WAS DRIVING INTO A PARKING SPOT SLOWLY USING BRAKES AND WHEN I WAS ABOUT TO COME TO A FULL STOP, THE BRAKES FAILED AND WOULDN'T STOP THE CAR COMPLETELY RESULTING IN ME DRIVING OVER A PARKING METER. IT FELT LIKE THE CAR ACCELERATED AS WELL AFTER HITTING PARKING METER BUT I WAS ABLE TO STOP CAR AFTER PRESSING ON THE BRAKES AGAIN. THANKFULLY NO ONE WAS HURT GIVEN SLOW SPEED AND NO ONE BEING ON SIDEWALK AT THE TIME.

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:          11180304
Incident Date:           January 16, 2019
Added to NHTSA Database:  February 15, 2019
Consumer Location:       Unknown
Vehicle Type:            2006 Mercedes-Benz R350
VIN:                     4JGCB65EX6A****

MERCEDES 2006 WHEN I BRAKE THE CAR WILL KEEP GOING. SUDDEN ACCELERATION. THIS HAS HAPPEN TWICE AND I HAVE NOT OWNED THE CAR FOR A YEAR. I COULD KILL SOMEONE. TOOK IT TO DEALER AND THREE DIFFERENT SHOPS AND NO ONE KNOWS WHAT I'M TALKING ABOUT HELP

3.    <u>Online Reputation Management</u>

38.    Online reputation management (commonly called "ORM" for short) is now a standard business practice among most major companies and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on products. "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation."[5] The growth of the internet and social media and the advent of reputation management companies have led to ORM becoming an integral part of many companies' marketing efforts. Defendants regularly monitored NHTSA in connection with its ORM activities, along with other internet-based social media website and blogs, because candid comments from Mercedes owners provide valuable data regarding quality control issues and customer satisfaction. Defendants, therefore, would have learned about the numerous complaints filed with NHTSA starting at least as early as September 2007.

---

[5]    Moryt Milo, *Great Businesses Lean Forward, Respond Fast*, SILICON VALLEY BUSINESS JOURNAL (September 5, 2013), http://www.bizjournals.com/sanjose/print-edition/2013/05/17/great-businesses-lean-forward-respond.html

4.    Manufacturer Communications with NHTSA

39.    "Federal regulations mandate that vehicle and vehicle equipment manufacturers comply with Early Warning Reporting requirements. One of the EWR requirements is that all manufacturers of motor vehicles or motor vehicle equipment, including low volume and child restraints, submit to NHTSA copies of their manufacturer communications. Manufacturers should submit all notices, bulletins, and other communications including warranty and policy extensions and product improvement communication sent to dealers, distributors, owners, purchasers, lessors, or lessees regarding any defect, failure or malfunction beyond normal deterioration in use, failure of performance, flaw or other unintended deviation from design specifications whether it is safety-related or not."[6]

40.    Defendants submitted at least one Manufacturer Communication to NHTSA, NHTSA ID Number: 10030929, involving the 2007 Mercedes-Benz ML-Class on or around June 15, 2009.

41.    On or around June 15, 2009, Mercedes informed dealerships that "corrosion protection coatings for brake components and hardware may be damaged and or stripped away if highly concentrated acid based cleaners are used. Once the corrosion protection is damaged or removed the brake components and or hardware

---

[6] *See Manufacturer Communications*, NHTSA https://www.nhtsa.gov/vehicle-manufacturers/manufacturer-communications (last visited May 17, 2022).

can begin to corrode. Include all models and model years." Accordingly, Defendants were aware of the partial or total loss of braking ability should the brake components begin to corrode.

42.     On the basis of that communication, Defendants either knew or should have known of the corrosive effect that moisture would have should it accumulate and cause corrosion in the brake booster housing unit in the Class Vehicles.

43.     Plaintiffs and members of the Class were never provided with copies of or information about this official communication with NHTSA as required by Early Warning Reporting requirements. Defendants failed to disclose the Brake Defect to owners and lessees of the Class Vehicles, including Plaintiffs and members of the Class, and, instead, intentionally concealed the Brake Defect.

5.     <u>Prior Recall of Mercedes Vehicles Due to Defective Brakes.</u>

44.     Mercedes' failure to remedy the Brake Defect is all the worse in the face of the prior recall due to issues concerning Mercedes' brake boosters.

45.     On or about July 15, 2017, Mercedes issued a recall for 16,301 imported cars in China over defective brake boosters. The recalled vehicles were A-class, B-class and CLA-class cars, manufactured between February 2012 and April 2013. These vehicles contained a brake booster vacuum line that had the potential to break due to a weak connector and then cause gradual loss of brake boosting capacity, posing a hazard to people in the vehicle. In comparison here, the Defect involves

corrosion in the brake booster housing unit, which can result in reduced brake performance or brake failure.

46. In almost every recall scenario, some type of internal investigation will be necessary, and in many cases, multiple investigations involving global enforcement entities and stakeholders are increasingly common. From the initial reporting and root cause determination to follow-on regulatory inquiries, a company can find itself involved in several over-lapping and cascading investigations. When conducting its investigation, Mercedes either did or should have discovered the Brake Defect involving the Class Vehicles.

47. The Defect is present in nearly 300,000 Class Vehicles, a vast number of vehicles. In conducting their investigation into defective brake boosters, Mercedes obviously would have examined brake boosters throughout its fleet to discern the cause of the defect, and during examination, the corrosive effect of moisture in the brake booster housing units would be readily apparent. Yet Mercedes proceeded to wait five more years following the 2017 recall in China before issuing a recall for the Class Vehicles.

**C.    The Inadequate and Untimely Safety Recall of Class Vehicles**

48. Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's reputation and have significant costs.

26

Following an unidentified incident in March 2022, on May 2, 2022 Mercedes determined that is could no longer delay recalling the Class Vehicles and "that a potential safety risk could not be ruled out and [so Mercedes] decided to conduct a recall." Three days later on May 5, 2022, Mercedes contacted NHTSA to inform them of the safety recall and to issue stop drive instructions.

49.    On May 9, 2022, Defendant MBUSA issued a safety recall to the NHTSA, NHTSA Recall No.: 22V-315 (the "Recall") affecting certain 2006-2012 ML-Class, GL-Class, and R-Class vehicles. The Recall Notice describes the Defect as follows:

> Moisture may wick under a rubber sleeve that is installed around the brake booster housing for aesthetic reasons. This might result in corrosion in the joint area of the brake booster housing.

50.    The Recall notice describes the safety risk to Plaintiffs and members of the Class as follows:

> After extended time in the field and in conjunction with significant water exposure, this corrosion might lead to a leakage of the brake booster. In this case, the brake force support might be reduced, leading to an increase in the brake pedal forces required to decelerate the vehicle and/or to potentially increased stopping distance.

> Additionally, in rare cases of very severe corrosion, it might be possible for a particularly strong or hard braking maneuver to cause mechanical damage in the brake booster, whereby the connection between brake pedal and brake system would fail. In such a very rare case, it would not be possible to decelerate the vehicle via the service brake.

> Thus, the risk of a crash or injury would be increased.

The function of the foot parking brake is not affected by this issue.

51.    And as a result Mercedes is advising Plaintiffs and members of the Class "not to drive their vehicles until the remedy has been performed." Yet as of the date of the filing of this Complaint, Mercedes still has yet to inform Plaintiffs and members of the Class and owner notifications letters have not been sent out. Further delaying this Recall may result in death or serious injury to owners of the defective Class Vehicles.

52.    The Recall is untimely and ineffective at remedying the significant losses, which Plaintiffs and the Class have suffered. Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's reputation and have significant costs. They did so at the expense of Plaintiffs and the Class.

D.    **Despite Its Knowledge, Mercedes Misrepresented And Concealed Important Information About the Brake Defect and Class Vehicle Safety.**

53.    Defendants failed to inform Class Vehicle owners and lessees at the point of sale and before purchase or lease of the Class Vehicles of the Brake Defect and that it would not be replaced in the event of failure. Defendants misrepresented by affirmative conduct and/or by omission and/or fraudulent concealment the existence of the Brake Defect in the Class Vehicles.

54.    For all the reasons above, Defendants had actual knowledge that Class Vehicles were experiencing braking failures due to the Brake Defect. Despite this knowledge, Defendants continued to sell Class Vehicles with the Brake Defect and allowed the Class Vehicles to be driven on the road endangering Plaintiffs and members of the Class. This knowledge is imputed to all Defendants because MBUSA monitored Class Vehicle performance in the United States and reported to its affiliated and parent companies, MBG and MBAG, respectively, in the United States and Germany.

55.    Despite actual and constructive knowledge of the Brake Defect as described in this Complaint, Defendants failed to cure the Brake Defect.

56.    Through no fault of their own, Plaintiffs and members of the Class did not possess sufficient technical expertise to recognize symptoms of the Brake Defect. This information, however, was well known to Defendants, but not revealed.

57.    Reasonable consumers, including Plaintiffs and members of the Class, would find disclosure of the Brake Defect to be material.

58.    Defendants concealed the Brake Defect from Plaintiffs and all Class Vehicle purchasers and lessees. Defendants intentionally failed to inform Class Vehicle purchasers and lessees that Class Vehicles incorporated a Brake Defect that would cause the braking systems to fail.

59.    Defendants concealed the existence of the Brake Defect including in, *inter alia*, the owner's manual accompanying Class Vehicles.

60.    Plaintiffs and members of the Class were not informed of the Brake Defect prior to their purchases or leases of the Class Vehicles.

61.    Defendants had actual knowledge, constructive knowledge and/or should have known upon proper inquiry and testing that Class Vehicles were defective with respect to the Brake Defect. This information was technical, proprietary, and not known by the ordinary consumer or the public, including Plaintiffs and members of the Class. Plaintiffs and members of the Class were ignorant of this technical information through no fault of their own.

62.    Additional information supporting allegations of fraud and fraudulent conduct is in the control of Defendants. This information includes but is not limited to communications with Class Vehicle owners, remedial measures, and internal corporate communications concerning how to deal with consumers who complain about the Brake Defect.

63.    Material information fraudulently concealed and/or actively suppressed by Defendants includes but is not limited to the Brake Defect described in the preceding paragraphs.

64.    Defendants continuously and affirmatively concealed the actual characteristics of Class Vehicles from Plaintiffs and other purchasers and lessees.

Defendants breached their affirmative duty of disclosure to Class Vehicle owners and lessees.

65.    Defendants breached implied warranties and misrepresented, fraudulently concealed, and suppressed the existence of the Brake Defect in Class Vehicles and omissions in accompanying owner's manuals.

66.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, unfairly favoring Defendants particularly where the Brake Defect was known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Brake Defect manifests in the Class Vehicles during their reasonably expected life), and absence of effective warranty competition.

67.    The bargaining position of Defendants for the sale of Class Vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers and lessees, including Plaintiffs and members of the Class. This is because Defendants knew of the Brake Defect in the Class Vehicles.

68.    Defendants included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that Class Vehicles were inherently defective and dangerous.

69.    Defendants unconscionably sold and leased defective Class Vehicles to Plaintiffs and members of the Class without informing these purchasers and lessees that the Class Vehicles were defective.

70.    Defendants' conduct renders the vehicle purchase and/or lease contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

71.    Defendants engaged in unconscionable fraudulent commercial practices, attempting to conceal the Brake Defect. Defendants are engaged in a continuing fraud concerning the true underlying cause of Class Vehicle failures.

72.    Defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning Class Vehicles, including information related to the Brake Defect, to deceive purchasers and lessees as described herein. At the time of purchase or lease, Defendants fraudulently omitted to disclose material matters regarding the Brake Defect in Class Vehicles, including its impact on future repairs, costs, and vehicle reliability. Defendants fraudulently concealed from Plaintiffs and members of the Class concerning the Brake Defect in Class Vehicles even though Defendants knew or should have known that information

concerning the Brake Defect was material and central to the marketing, sale, and lease of Class Vehicles to prospective purchasers and lessees, including Plaintiffs and members of the Class.

73.    Material information was fraudulently concealed and/or actively suppressed to sell or lease Class Vehicles to uninformed consumers (including Plaintiffs and members of the Class) premised on affirmations and representations as described in this complaint.

74.    If Plaintiffs and members of the Class had been informed of the Brake Defect in their Class Vehicles, they would not have purchased or leased their respective Class Vehicles or paid substantially less. If Plaintiffs and members of the Class had learned of the Brake Defect in their respective Class Vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased or leased the Class Vehicles since each class member believed they were purchasing or leasing vehicles without a major defect and were not fully informed of true characteristics and attributes of Class Vehicles. Defendants' conduct that violated the consumer fraud statutes alleged below deprived Plaintiffs and members of the Class of that remedy.

75.    Material information concerning Class Vehicles was concealed and/or suppressed to protect Defendants' corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity, and limit brand disparagement.

Purchasers believed they were obtaining vehicles with different attributes than described and purchased or leased and were accordingly deprived of economic value and paid a price premium for their Class Vehicles.

76.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiffs and members of the Class purchased or leased Class Vehicles and sustained an ascertainable loss, including, but not limited to, financial harm as described in this complaint.

## V.    CLASS ACTION ALLEGATIONS

### A.    The Class Definition

77.    The "Class Vehicles" include all Mercedes vehicles in the United States that contain the Brake Defect that were manufactured, sold, distributed, or leased by Defendants and purchased or leased by Plaintiffs or a Class member including certain 2006-2012 ML-Class, GL-Class, and R-Class vehicles.[7]

78.    The proposed Nationwide Class includes all persons and entities that purchased or leased a Class Vehicle in the United States, including its territories. Plaintiffs also propose separate State Sub-Classes for New Jersey and Florida, each

---

[7] More specifically, the Class Vehicles include the Mercedes (Models/Model Years): AMG R63/2007, GL320/2007-2009, GL350/2010-2012, GL450/2007-2012, GL550/2008-2012, ML320/2007-2009, ML350/2006-2011, ML450/2010-2011, ML500/2006-2007, ML550/2008-2011, R320/2007-2009, R500/2006-2007, AMG ML63/2007-2011, R350/2006-2012, and R550/2008. Discovery may reveal additional makes and/or models affect by the Brake Defect, Plaintiffs shall amend to include additional makes and/or models as necessary.

of which includes all persons and entities that purchased or leased a Class Vehicle in that state.

79.    Excluded from the Classes are:  Defendants' officers, directors and employees; Defendants' affiliates and affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers, directors, and employees; and Judicial officers and their immediate family members and associated court staff assigned to this case.

80.    The nature of notice to the Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by the best notice practicable under the circumstance including, inter alia, email, publication in major newspapers and/or on the internet.

81.    Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, reduced, divided into additional State Sub-Classes under Rule 23(c)(5), or otherwise modified.

**B.    Numerosity: Federal Rule of Civil Procedure 23(a)(1)**

82.    The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. There are hundreds of thousands of Class Vehicles and Class members nationwide. The precise number and identities of Nationwide Class and State Class members may be ascertained from Defendants' records and motor vehicle regulatory data. Class

members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

### C. Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)

83.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These include, without limitation, the following:

    a.  Whether the Class Vehicles have a Brake Defect;

    b.  Whether Defendants have engaged in unfair and/or deceptive trade practices by failing to disclose the material fact that the Class Vehicles have the Brake Defect;

    c.  Whether Defendants have engaged in unfair and/or deceptive trade practices by selling the Class Vehicles with a Brake Defect;

    d.  Whether Defendants knew or should have known about the Brake Defect in the Class Vehicles before making the Class Vehicles available for purchase and use by Plaintiffs and the Class;

    e.  Whether Defendants owed a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacture, warranting, and marketing of the Class Vehicles;

f.  Whether Defendants breached their duties to Plaintiffs and the Class to exercise reasonable and ordinary care in the testing, design, production, manufacturer, warranting, and marketing of the Class Vehicles;

g.  Whether Defendants breached their duties to Plaintiffs and the Class by failing to promptly withdraw the Class Vehicles from the marketplace or take other appropriate remedial action;

h.  Whether the Class Vehicles failed to perform in accordance with the reasonable expectations of ordinary consumers such as Plaintiffs and the Class;

i.  Whether Defendants' Class Vehicles fail to perform as advertised or warranted;

j.  Whether Plaintiffs and the Class are entitled to compensatory and/or actual damages, including but not limited to the cost to repair the Class Vehicles, remove and replace the defective brakes, as well as damages from the diminution of value of Class Vehicles;

k.  Whether Defendants concealed material facts from their communications and disclosures to Plaintiffs and the Class regarding the Brake Defect in the Class Vehicles;

l.  Whether, as a result of Defendants' conduct, Plaintiffs and the Class have suffered damages and, if so, the appropriate amount thereof; and

m. Whether Plaintiffs and the Class are entitled to treble damages and/or punitive damages or other relief.

### D.    Typicality: Federal Rule of Civil Procedure 23(a)(3)

84.    Plaintiffs' claims are typical of the Class members' claims whom they seek to represent under Fed. R. Civ. P. 23(a)(3), because Plaintiffs and each Class member purchased or leased a Class Vehicle and were comparably injured through Defendants' wrongful conduct as described above. Plaintiffs and the other Class members suffered damages as a direct proximate result of the same wrongful practices by Defendants. Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members. Plaintiffs' claims are based on the same legal theories as the claims of the other Class members.

### E.    Adequacy: Federal Rule of Civil Procedure 23(a)(4)

85.    Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests do not conflict with the interests of the Class members. Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automobile defect litigation and other consumer protection litigation. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Class members. Therefore, the interests of the Class members will be fairly and adequately protected.

**F.    Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**

86.    Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, for the Class as a whole.

**G.    Superiority: Federal Rule of Civil Procedure 23(b)(3)**

87.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims individually against Defendants such that it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

88.    Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

89.    Defendants have known of the Brake Defect based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, consumer complaints made as early as September 13, 2007 to Defendants' network of exclusive dealers and NHTSA, aggregate warranty, consumer complaints to dealers and online, and testing performed in response to consumer complaints. Defendants were aware (or should have been aware) of the Brake Defect in the Class Vehicles.

90.    Despite this knowledge, Defendants did not disclose the seriousness of the issue and, in fact, concealed the prevalence of the problem. In so doing, Defendants have failed to warn consumers, initiate timely recalls, or inform NHTSA, as Mercedes is obligated to do.

91.    Defendants had a duty to disclose the Brake Defect to consumers and NHTSA. Contrary to this duty, Mercedes concealed the Brake Defect by continuing to distribute, sell, and/or lease the Class Vehicles to Plaintiffs and the Class members; to advertise the safety of the Class Vehicles; and to fail to notify regulators or the Plaintiffs and the Class members about the truth about the Class Vehicles.

92.    Because of the highly technical nature of the Brake Defect, Plaintiffs and Class members could not independently discover it using reasonable diligence.

Before the retention of counsel and without third-party experts, Plaintiffs and Class members lack the necessary expertise to understand the Brake Defect.

93.     Accordingly: (1) Defendants' fraudulent concealment tolls the statute of limitations; (2) Defendants are estopped from relying on the statute of limitations; and (3) the statute of limitations is tolled by the discovery rule.

## VII.   NATIONWIDE CLASS CLAIMS

**NATIONWIDE COUNT I**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *ET SEQ.***
**(ON BEHALF THE NATIONWIDE CLASS)**

94.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

95.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301, by virtue of 28 U.S.C. § 1332 (a)-(d).

96.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

97.     Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

98.     Each Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. 15 U.S.C. § 2301(4)-(5).

99.    15 U.S.C.  § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a warranty.

100.    Defendants provided Plaintiffs and the other Class members with a written warranty in connection with the purchase or lease of their vehicles that is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). As part of these written warranties, Defendants warranted that the Class Vehicles were defect-free and/or would meet a specified level of performance over a specified period of time that formed the basis of a bargain between Defendants and Plaintiffs and the other Class members.

101.    Defendants provided Plaintiffs and the other Class members with an implied warranty in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As part of the implied warranty, Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

102.    Defendants breached these warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share a common design defect in that they contain a defective braking system that could cause partial or complete

brake failure and significantly increases the risk death and/or injury to operators, passengers, and the general public. Any efforts to limit the warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

103.   Any limitations on the warranties is procedurally unconscionable. There was unequal bargaining power between Defendants on the one hand, and Plaintiffs and the other Class members, on the other.

104.   Any limitations on the warranties is substantively unconscionable. Defendants knew that the Class Vehicles were defective and would continue to pose safety risks. Defendants also knew that their express warranties would not cover the Brake Defect, and knowingly and intentionally transferred the costs of repair and/or replacement to Plaintiffs and the Class members.

105.   Plaintiffs and each of the other Class members have had sufficient direct dealings with either Defendants or their agents (dealerships) to establish privity of contract.

106.   Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and

intended to benefit consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the Brake Defect.

107. Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

108. Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their defective Class Vehicles by retaining them.

109. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum

of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

110.    Plaintiffs also request, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the Brake Defect in their vehicles. Such expenses and losses will continue as Plaintiffs and Class members must take time off from work, pay for rental cars or other transportation arrangements, child care, and the myriad expenses involved in going through a recall process.

111.    The right of Class members to recover these expenses as an equitable matter to put them in the place they would have been but for Defendants' conduct presents common questions of law. Equity and fairness requires the establishment by Court decree and administration under Court supervision of a program funded by

Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

## NATIONWIDE COUNT II
## FRAUD BY CONCEALMENT OR OMISSION
## COMMON LAW
## (ON BEHALF OF THE NATIONWIDE CLASS OR IN THE ALTERNATIVE STATE SUB-CLASSES)

112.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

113.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of fraudulent concealment, as there are no true conflicts among various states' laws of fraudulent concealment. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977). In the alternative, Plaintiffs bring this claim on behalf of the State Sub-Classes.

114.   Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Brake Defect with the intent to mislead Plaintiffs and Class members. Defendants knew, or should have known, that that the Brake Defect in the Class Vehicles could cause partial or complete loss of braking capability significantly increasing the risk of collision and serious injury for drivers, occupants, and the general public.

115.    A reasonable consumer would not have expected that the Class Vehicles contain the Brake Defect. Defendants knew that reasonable consumers expect that their vehicle have a fully functional braking system, and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

116.    Defendants ensured that Plaintiffs and the Class did not discover this information through concealing it and misrepresenting the Class Vehicles' braking systems without disclosing the truth. Defendants intended for Plaintiffs and the Class to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid.

117.    Defendants had a duty to disclose the Brake Defect because:

a.     Defendants had exclusive and/or far superior knowledge and access to the facts about this hidden and complex safety Defect. Defendants also knew that these technical facts were not known to or reasonably discoverable by Plaintiff and the Class;

b.     Defendants knew the Brake Defect (and its safety risks) was a material fact that would affect Plaintiff's or Class members' decisions to buy or lease Class Vehicles;

c.     Defendants are subject to statutory duties to disclose known safety Defects to consumers and NHTSA; and

d.     Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their braking systems, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to Plaintiff and the Class that the Class Vehicles contained the dangerous Brake Defect. Because they volunteered to provide information about the Class Vehicles that they offered for sale to Plaintiff and the Class, Defendants had the duty to disclose the whole truth. They did not.

118. To this day, Defendants have not made full and adequate disclosure, continue to defraud Plaintiffs and the Class, and continue to conceal material information regarding the Brake Defect. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and the Class.

119. Defendants concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls

that would hurt the brand's image and cost money. They did so at the expense of Plaintiffs and the Class. Had they been aware of the Brake Defect in the Class Vehicles, and Defendants' callous disregard for safety, Plaintiffs and the Class either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

120.   Accordingly, Defendants are liable to Plaintiffs and the Class for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

121.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of Plaintiffs' and the Class' rights and well-being; and to enrich themselves. Their misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**NATIONWIDE COUNT III**
**NEGLIGENT MISREPRESENTATION**
**COMMON LAW**
**(ON BEHALF OF THE NATIONWIDE CLASS OR IN THE**
**ALTERNATIVE STATE SUB-CLASSES)**

122.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

123.    Plaintiffs assert this Negligent Misrepresentation count on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Sub-Classes.

124.    Defendants owed a duty to disclose the Brake Defect and its corresponding safety risk to Plaintiffs and Class members because Defendants knew or should have known of the Brake Defect and the risks associated with the manifestation of the Brake Defect. Defendants also made partial disclosures regarding the safety of the Class Vehicles while Defendants either knew or should have known that the Class Vehicles possessed the Brake Defect and failed to disclose its existence and its corresponding safety hazard.

125.    Defendants negligently misrepresented and omitted material facts, in owners' manuals, maintenance schedules, or elsewhere, concerning the standard, quality, or grade of the Class Vehicles and the existence of the Brake Defect exposing drivers and occupants to safety risks. Defendants misrepresented that they would remedy any defects under the express warranties but limited their coverage to mechanical defects. As a direct result of Defendants' negligent conduct, Plaintiffs and Class members have suffered actual damages.

126.    The Brake Defect is material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. When the Brake Defect manifests, the driver may experience a partial or total loss of braking capability that

may result in death and/or serious bodily injury to the occupants. During failure, drivers may be shocked, distracted and distressed and be unable to safely operate the Class Vehicles. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents which may result from the manifestation of the Brake Defect. No reasonable consumer expects a vehicle to contain a defect in design, such as the Brake Defect, that can cause partial or total brake failure with no warning or time to take preventative measures.

127.    Plaintiffs and Class members would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Brake Defect and corresponding safety risk, or would have paid less for the Class Vehicles. Plaintiffs and Class members justifiably relied upon Defendants' negligent false representations and omissions of material facts.

128.    As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles with the Brake Defect, Plaintiffs and Class members have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

## NATIONWIDE COUNT IV
## UNJUST ENRICHMENT
## COMMON LAW
## (ON BEHALF OF THE NATIONWIDE CLASS OR IN THE
## ALTERNATIVE STATE SUB-CLASSES)

129.    Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein, with the exception of the paragraphs regarding breach of express warranty and privity of contract.  Plaintiffs bring this Unjust Enrichment count in the alternative to the breach of warranty claims, and assert this count simultaneously at the pleading stage, given Plaintiffs' allegations that the warranties at issue are unconscionable.

130.    Plaintiffs assert this Unjust Enrichment count on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Sub-Classes.

131.    Because of their conduct, Defendants caused damages to Plaintiffs and Class members.

132.    Plaintiffs and Class members conferred a benefit on the Defendants by overpaying for Class Vehicles at prices that were artificially inflated by Defendants' concealment of the Brake Defect and misrepresentations regarding the Class Vehicles' safety.

133.    As a result of Defendants' fraud and deception, Plaintiffs and Class members were not aware of the facts concerning the Class Vehicles and did not benefit from the Defendants' misconduct.

134.   Defendants knowingly benefitted from their unjust conduct. They sold and leased Class Vehicles equipped with a Brake Defect for more than what the vehicles were worth, at the expense of Plaintiffs and Class members.

135.   Defendants readily accepted and retained these benefits from Plaintiffs and Class members.

136.   It is inequitable and unconscionable for Defendants to retain these benefits because they misrepresented that the Class Vehicles were safe, and intentionally concealed, suppressed, and failed to disclose the Brake Defect to consumers. Defendants knowingly limited their warranty coverage and excluded the Brake Defect. Plaintiffs and Class members would not have purchased or leased the Class Vehicles or paid less for them had Defendants not concealed the Brake Defect.

137.   Plaintiffs and Class members do not have an adequate remedy at law.

138.   Equity cannot in good conscience permit the Defendants to retain the benefits that they derived from Plaintiffs and Class members through unjust and unlawful acts, and therefore restitution or disgorgement of the amount of the Defendants' unjust enrichment is necessary.

**NATIONWIDE COUNT V**
**VIOLATION OF THE N.J. CONSUMER FRAUD ACT ("NJCFA")**
**N.J. STAT. ANN. § 56:8-2 ET SEQ.**
**(ON BEHALF OF THE NATIONWIDE CLASS AND**
**NEW JERSEY SUB-CLASS)**

139.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

140.   Plaintiffs Jeffrey Robinson and Thomas Stefanopoulos  (for purposes of this count, "Plaintiffs") bring this claim on behalf of themselves, the Nationwide Class, and the New Jersey Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

141.   The NJCFA prohibits:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J. STAT. ANN. § 56:8-2.

142.   Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class are consumers who purchased or leased Class Vehicles for personal, family, or household use.

143.   In violation of the NJCFA, Defendants employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing Class Vehicles that contain the Brake Defect and present an undisclosed safety risk to drivers and occupants of the Class Vehicles. Further, Defendants

54

misrepresented the standard, quality or grade of the Class Vehicles—which were sold or leased—and failed to disclose the Brake Defect and corresponding safety risk in violation of the NJCFA.

144. Defendants' misrepresentations and fraudulent omissions were material to Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class. When Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' braking systems were free from latent defects or alternatively, would be covered under Defendants' express warranties. Had Defendants disclosed that the Brake Defect may fail and/or create an unavoidable safety risk, Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

145. Defendants knowingly concealed, suppressed and/or omitted the existence of the Brake Defect and safety risk in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

146. Defendants knew that the Brake Defect was designed defectively and unconscionably limited the manufacturer's warranty coverage so that the Brake Defect would be excluded, thereby unlawfully transferring the costs of repair or replacement to Plaintiffs and members of the Nationwide Class and New Jersey Sub-

Class. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

147. Defendants owed a duty to disclose the Brake Defect and its corresponding safety risk to Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Brake Defect and the risks associated with the Brake Defect. Rather than disclose the Brake Defect, Defendants intentionally concealed the Brake Defect with the intent to mislead Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the braking systems to Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class.

148. Defendants also knew, or should have known, that the Brake Defect in the Class Vehicles could cause complete or partial loss of braking capability. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious death or serious injury.

149. Had Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class known about the Brake Defect at the time of purchase, including the safety hazard posed by the Brake Defect, they would not have bought the Class Vehicles or would have paid much less for them.

150.   As a direct and proximate result of Defendants' wrongful conduct in violation of the NJCFA, Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class have suffered and continue to suffer harm by the threat of unexpected failure of their brakes and/or actual damages in the amount of the cost to replace the braking systems, and damages to be determined at trial. Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class have also suffered the ascertainable loss of the diminished value of their vehicles.

151.   As a result of Defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial.  *See* N.J. STAT. ANN. § 56:8-19.  Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA.  *See* N.J. STAT. ANN. § 56:8-19.

**NATIONWIDE COUNT VI**
**BREACH OF EXPRESS WARRANTY**
**N.J. STAT. ANN. §§ 12A:2-314 AND 12A:2A-210**
**(ON BEHALF OF THE NATIONWIDE CLASS AND**
**NEW JERSEY SUB-CLASS)**

152.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

153.   Plaintiffs Jeffrey Robinson and Thomas Stefanopoulos  (for purposes of this count, "Plaintiffs") bring this claim on behalf of themselves, the Nationwide Class, and the New Jersey Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

154.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.J. STAT. ANN. § 12A:2-104(1), and "sellers" and "lessors" of motor vehicles under § 12A:2-103(1)(d) and § 12A:2A-103(1)(p).

155.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. STAT. ANN. §§ 12A:2-105(1) and 2A-103(1)(h).

156.   Defendants provided Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. Under the warranties provided to Plaintiffs and the Nationwide Class and New Jersey Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, Defendants breached these warranties.

157.   Defendants marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Brake Defect and its corresponding safety risk from Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class.

158.    Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

159.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Brake Defect is by design, the warranties are substantively unconscionable because Defendants knew that the braking systems were defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Brake Defect.

160.    Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to

adequately inform Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class that the Class Vehicles contained the Brake Defect and have failed to provide a suitable repair or replacement of the braking system free of charge within a reasonable time.

161.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where the Brake Defect was known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Brake Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition.

162.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class.  Among other things, Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity

in bargaining power existed between Defendants and members of the Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Brake Defect posed a safety risk.

163.    Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Brake Defect and have failed to provide a suitable repair or replacement of the braking system free of charge within a reasonable time.

164.    Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

165.   Because of the Brake Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation. Indeed, Mercedes has explicitly informed owners that it is unsafe to drive their Class Vehicle.

166.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class have been damaged in an amount to be determined at trial.

167.   In the alternative, should Defendants claim that the Brake Defect is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

168.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## NATIONWIDE COUNT VII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## N.J. STAT. ANN. §§ 12A:2-314, 12A:2A-103, AND 12A:2A-212
## (ON BEHALF OF THE NATIONWIDE CLASS AND
## NEW JERSEY SUB-CLASS)

169.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

170.    Plaintiffs Jeffrey Robinson and Thomas Stefanopoulos (for purposes of this count, "Plaintiffs") bring this claim on behalf of themselves, the Nationwide Class, and the New Jersey Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

171.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.J. STAT. ANN.§ 12A:2-104(1), and "sellers" and "lessors" of motor vehicles under § 12A:2-103(1)(d) and § 12A:2A-103(1)(p).

172.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. STAT. ANN. §§ 12A:2-105(1) and 2A-103(1)(h).

173.    Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or

sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

174.  A warranty that the Class Vehicles with the Brake Defect were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.J. STAT. ANN. §§ 12A:2- 314 and 2A-212.

175.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect—the Brake Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

176.  Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

177.  Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers.  The dealers were not intended to

be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles.

178.  Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA.

179.  Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

180.  As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class have been damaged in an amount to be proven at trial.

181.  Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.

Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Brake Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class. Among other things, Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Nationwide Class and New Jersey Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Brake Defect posed a safety risk.

182.    Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

183.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

## VIII. STATE SPECIFIC CLAIMS

### A. Florida Counts

**COUNT I**
**VIOLATION OF FLORIDA'S DECEPTIVE & UNFAIR TRADE PRACTICES ACT ("FDUTPA"), FLA. STAT. §§ 501.201, *ET SEQ.***
**(ON BEHALF OF THE FLORIDA SUB-CLASS)**

184. Plaintiff Francy Diaz Perez (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Florida Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

185. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

186. Plaintiff and the members of the Florida Sub-Class are "consumers" within the meaning of the FDUTPA, FLA. STAT. § 501.203(7).

187. Defendants engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

188. FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1). Defendants engaged in unfair and deceptive practices that violated the FDUTPA as described above.

189. In the course of their businesses, Defendants failed to disclose and actively concealed the Brake Defect contained in the Class Vehicles and the

corresponding dangers and risks posed by the Class Vehicles, as described above and otherwise engaged in activities with a tendency or capacity to deceive.

190.  In violation of the FDUTPA, Defendants employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentation, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale and/or lease of Class Vehicles. Defendants knowingly concealed, suppressed, and omitted material facts regarding the Brake Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiff and the members of the Florida Sub-Class.

191.  Defendants actively suppressed the fact that the Brake Defect in Class Vehicles presents a safety hazard. Further, Defendants employed unfair and deceptive trade practices by denying repairs or replacement of the Brake Defect within a reasonable time in violation of FDUTPA. Defendants also breached warranties as alleged below in violation of FDUTPA.

192.  As alleged above, Defendants knew or should have known of the Brake Defect contained in the Class Vehicles since at least 2009, if not before. Prior to installing the Brake Defect in the Class Vehicles, Defendants engaged in pre-production testing and failure mode analysis. Defendants should have known about the Brake Defect after monitoring numerous consumer complaints sent to NHTSA

and online. Defendants, nevertheless, failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles with the Brake Defect.

193.   By failing to disclose and by actively concealing the Brake Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as a reputable manufacturer or distributor for a reputable manufacture that values safety, Defendants engaged in unfair or deceptive business practices in violation of the FDUTPA. Defendants deliberately withheld the information about the propensity of the Brake Defect to cause partial or total loss of braking capability as well as the corresponding safety hazard to vehicle occupants.

194.   Defendants' unfair and deceptive trade practices were likely intended to deceive a reasonable consumer. Plaintiff and the members of the Florida Sub-Class had no reasonable way to know that the Class Vehicles contained the Brake Defect, which were defective in design and posed a serious and significant safety risk. Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Brake Defect within their braking systems and the corresponding safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions, as Plaintiff and the members of the Florida Sub-Class did.

195.   Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Brake Defect with the intent to mislead

Plaintiff and members of the Florida Sub-Class. Defendants knew, or should have known, that the braking systems were defective in design and that the manufacturer's warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement. Defendants also knew, or should have known, that the Brake Defect in the Class Vehicles could cause a partial or total loss of braking capability. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

196.   Defendants knew or should have known that their conduct violated the FDUTPA.

197.   Defendants made material statements and/or omissions about the safety and reliability of the Class Vehicles with the Brake Defect that were either false or misleading. Defendants' misrepresentations, omissions, statements, and commentary have included selling and marketing Class Vehicles as safe and reliable, despite their knowledge of the Brake Defect and its corresponding safety hazard.

198.   To protect their profits, avoid remediation costs and public relation problems, and increase their profits by having consumers pay to remedy the Brake Defect, Defendants concealed the defective nature and safety risk posed by the Class Vehicles with the Brake Defect. Defendants allowed unsuspecting new and used car purchasers and lessees to continue to buy or lease the Class Vehicles and continue to drive them, despite the safety risk they pose.

70

199.   Defendants owed Plaintiff and the members of the Florida Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and the existence of the Brake Defect because Defendants:

a.    Possessed exclusive knowledge of the Brake Defect and its associated safety hazard;

b.    Intentionally concealed the foregoing from Plaintiff and the members of the Florida Sub-Class; and/or

c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff and the members of the Florida Sub-Class that contradicted these representations.

200.   Because Defendants fraudulently concealed the Brake Defect in the braking systems of Class Vehicles, and now that the Brake Defect has been disclosed, the value of the Class Vehicles has greatly diminished, and they are now worth significantly less than they otherwise would be. Further, Plaintiff and the members of the Florida Sub-Class were deprived of the benefit of the bargain they reached at the time of purchase or lease.

201.   Defendants' failure to disclose and active concealment of the Brake Defect in the Class Vehicles are material to Plaintiff and the members of the Florida Sub-Class. A vehicle made by an honest and reputable manufacturer of safe vehicles

is worth more than an otherwise comparable vehicle made by a dishonest and disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly reports and remedies them.

202. Plaintiff and the members of the Florida Sub-Class suffered ascertainable losses caused by Defendants' misrepresentations and their failure to disclose material information. Had Plaintiff and the members of the Florida Sub-Class been aware of the Brake Defect that existed in the Class Vehicles and Defendants' complete disregard for the safety of its consumers, Plaintiff and the members of the Florida Sub-Class either would not have paid as much for their vehicles or would not have purchased or leased them at all. Plaintiff and the members of the Florida Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

203. Plaintiff and the members of the Florida Sub-Class risk loss of use of their vehicles as a result of Defendants' act and omissions in violation of FDUTPA, and these violations present a continuing risk to Plaintiff, the Florida Sub-Class, and the public in general. Defendants' unlawful act and practices complained of above affect the public interest.

204. As a direct and proximate result of Defendants' violations of the FDUTPA, Plaintiff and the members of the Florida Sub-Class have suffered injury-in-fact and/or actual damage.

205.   Plaintiff and the members of the Florida Sub-Class are entitled to recover their actual damages, under FLA. STAT. § 501.211(2), and attorneys' fees under FLA. STAT. § 501.2105(1).

206.   Plaintiff and the members of the Florida Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**COUNT II**
**BREACH OF EXPRESS WARRANTY**
**FLA. STAT. §§ 672.313, 680.21, AND 680.1031**
**(ON BEHALF OF THE FLORIDA SUB-CLASS)**

207.   Plaintiff Francy Diaz Perez (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Florida Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

208.   Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

209.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under FLA. STAT. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

210.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under FLA. STAT. § 680.1031(1)(p).

211.   The Class Vehicles are and were at all relevant times "goods" within the meaning of FLA. STAT. §§ 672.105(1) and 680.1031(1)(h).

212.   Defendants provided Plaintiff and members of the Florida Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. Under the warranties provided to Plaintiff and the Florida Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, Defendants breached these warranties.

213.   Defendants marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Brake Defect and its corresponding safety risk from Plaintiff and members of the Florida Sub-Class.

214.   Plaintiff and members of the Florida Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Florida Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have

no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

215.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the Florida Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Brake Defect is by design, the warranties are substantively unconscionable because Defendants knew of the Brake Defect and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Brake Defect.

216.   Plaintiff and members of the Florida Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff and members of the Florida Sub-Class that the Class Vehicles contained the Brake Defect and failed to provide a suitable repair or replacement of the Brake Defect free of charge within a reasonable time.

217.   On information and belief, Defendants have not suitably repaired or replaced the Brake Defect free of charge for Plaintiff and members of the Florida Sub-Class despite the existence of the Brake Defect in the Class Vehicles at the time of sale or lease.

218.   The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where the Brake Defect was known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Brake Defect manifests in the Class Vehicles during their reasonably expected life), and absence of effective warranty competition.

219.   The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Florida Sub-Class.  Among other things, Plaintiff and members of the Florida Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Brake Defect posed a safety risk.

220.   Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of, concealed the Brake Defect, and have failed to provide a suitable repair or replacement of the Brake Defect free of charge within a reasonable time.

221.   Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

222.   Because of the Brake Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

223.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the Florida Sub-Class have been damaged in an amount to be determined at trial.

224.   In the alternative, should Defendants claim that the Brake Defect is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Florida Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

225.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and members of the Florida Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Florida Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**COUNT III**
**BREACH OF IMPLIED WARRANTY**
**FLA. STAT. §§ 672.314, 372.315, AND 680.1031**
**(ON BEHALF OF THE FLORIDA SUB-CLASS)**

226.    Plaintiff Francy Diaz Perez (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Florida Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

227.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

228.    Plaintiff and members of the Florida Sub-Class purchased or leased the Class Vehicles, manufactured by Defendants, from Defendants by and through their authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

229.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under FLA. STAT. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

230.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under FLA. STAT. § 680.1031(1)(p).

231.    The Class Vehicles are and were at all relevant times "goods" within the meaning of FLA. STAT. §§ 672.105(1) and 680.1031(1)(h).

232.   Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for ordinary purpose for which vehicles are used pursuant to FLA. STAT. § 672.314.

233.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation pursuant to FLA. STAT. § 672.315. The Class Vehicles contain an inherent defect—the Brake Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached the implied warranty of merchantability.

234.   Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

235.   Plaintiff and members of the Florida Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Florida Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the implied warranty of merchantability provided with the Class Vehicles.

236.   Defendants were provided notice of the Brake Defect through their own testing, and by numerous consumer complaints made to their authorized dealers nationwide and complaints to NHTSA. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Brake Defect and, on information and belief, have refused to repair or replace the Brake Defect free of charge within a reasonable time.

237.   Affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

238.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Florida Sub-Class have been damaged in an amount to be proven at trial.

81

239.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Brake Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Florida Sub-Class. Among other things, Plaintiff and members of the Florida Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Florida Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Brake Defect posed a safety risk.

240.   Plaintiff and members of the Florida Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

241.   Any applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Class and State Sub-Classes, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class and Sub-Classes, and Plaintiffs' counsel as counsel for the Class and Sub-Classes;

B.    An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.    Injunctive and equitable relief in the form of a comprehensive program to repair or replace the Brake Defect in the braking systems in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all members of the Class for all costs and economic losses;

D.    Appropriate injunctive and equitable relief;

E.    A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

F.      An order awarding costs, restitution, disgorgement, punitive damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss, overpayment damages, and out-of-pocket costs in an amount to be determined at trial;

G.      An order awarding any applicable statutory and civil penalties;

H.      A declaration that Defendants are required to engage in corrective advertising;

I.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

J.      An award of costs, expenses and attorneys' fees as permitted by law; and

K.      Such other or further relief as the Court may deem appropriate, just, and equitable.

## X.    DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: May 18, 2022

Respectfully submitted,

*/s/ James E. Cecchi*

Christopher A. Seeger
Christopher L. Ayers
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 679-8656
cseeger@seegerweiss.com
cayers@seegerweiss.com

James E. Cecchi
Caroline F. Bartlett
Jordan M. Steele
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
cbartlett@carellabyrne.com
jsteele@carellabyrne.com